IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARMANDO GUTIERREZ,<br><br>　　Plaintiff,<br><br>v.<br><br>JOHN M. BARWICK, DAVID MITCHELL, CHRISTAL CROW, A. HILL, N. SHOCKLEY, J. SADDLER, RYAN NOTHNAGLE, MARGAROT MADOLE, LATOYA HUGHES, K. SMITH, A. CACIOPPO, OFFICER REAMS HILL, OFFICER SKI, OFFICER SIMMONS, DR. MYERS, JANE DOE/JOHN DOE NURSES, JANE/JOHN DOE MAINTENANCE STAFF,<br><br>　　Defendants. | Case No. 24-cv-2645-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

　　Plaintiff Armando Gutierrez, an inmate of the Illinois Department of Corrections who is currently incarcerated at Western Illinois Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Pinckneyville Correctional Center. Gutierrez's original Complaint (Doc. 1) was dismissed without prejudice for failure to state a claim (Doc. 11). He was granted leave to file an amended pleading. In his First Amended Complaint (Doc. 12), Gutierrez alleges Defendants were deliberately indifferent to his conditions of confinement and medical conditions.

This case is now before the Court for preliminary review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The First Amended Complaint

Upon arriving at Pinckneyville Correctional Center in April 2022, Gutierrez informed Dr. Myers about a recent surgery for a urethral stricture and his need for a single-man cell, as well as front cuff, bottom bunk, and lower gallery permits (Doc. 12, p. 10). Because of the surgery, Gutierrez needed access to a toilet without waiting for use by a cellmate and thus he asked to be placed in a single-man cell in order to have ready access to the toilet (*Id*. at pp. 36-37). He also informed Dr. Myers of an ongoing issue involving a mass in his small intestine that was scheduled for removal (*Id*. at p. 10). Dr. Myers allegedly refused all of Gutierrez's celling requests and placed him in general population.

In May 2022, Gutierrez was placed in Unit 2D with another inmate (Doc. 12, p. 10). Upon arrival at his assigned cell, Gutierrez noticed that the cell was too small for two grown men and failed to meet American Correctional Association Standards (*Id*.). He believed the cell size also violated Illinois state law. Gutierrez informed Correctional Officer Ski of his issues with the cell and requested to be single-celled (*Id*. at p. 11). Officer

Ski informed Gutierrez that he did not make placement decisions and directed Gutierrez to submit a written request to the placement office.

Gutierrez wrote several requests to Placement Officer Reams/Hill asking to be placed in a single-man cell (Doc. 12, p. 12). He also informed John Doe Unit Officer, who was working in Unit 2D, and wrote requests to the warden (*Id.*). None of the officers acted to place him in a proper cell. Neither the placement officer nor the warden answered his written requests (*Id.* at p. 12). As a result, Gutierrez remained in the cell with another inmate (*Id.*). He was placed in various units throughout Pinckneyville, including Unit 2 and Unit 3, but all of the cells in the various units were identical in size and shape (*Id.*). None of the cells met the required floor space for two inmates (*Id.*). Gutierrez remained in these cells from April 2022 through January 2, 2025 (*Id.*). On January 2, 2025, Gutierrez was transferred out of Pinckneyville. He alleges this was an act of retaliation for filing this lawsuit (*Id.*).

In July 2023, Gutierrez noticed that officials at the prison started scheduling lockdowns, stating that the reason for the lockdown was because the prison was short on staff (Doc. 12, p. 13). As a result of the lockdowns, Gutierrez was confined to his cell four days a week (*Id.*). Due to the lack of out of cell time, Gutierrez experienced extreme back pain, joint pain, constipation, headaches, and depression (*Id.*). On January 15, 2024, Gutierrez filed a grievance after speaking with counselor K. Smith about the cell sizes and lockdowns (*Id.*). His grievance informed Smith that he was experiencing physical and mental injuries due to the size of his cell and frequent lockdowns (*Id.*). Gutierrez explained that the cell size did not meet Illinois state law requirements because they were

3

built before the enactment of the statute (*Id*. at p. 14). He further explained the detriments to his health that he had experienced as a result of the lack of exercise and out of cell time (*Id*.). Gutierrez alleges that K. Smith was previously a correctional officer before becoming a counselor and she was aware of the issues with the cell size (*Id*. at p. 15). Smith responded to the grievance with a "rubber stamp" answer. She failed to properly address his concerns and failed to address the size of the cell (Doc. 12, p. 15). He believes that her response was inappropriate and reckless (*Id*.).

Gutierrez appealed Smith's response to grievance officer J. Saddler, but Saddler also failed to address Gutierrez's concerns (Doc. 12, p. 17). He merely stated that yard and dayroom scheduling was an administrative decision, and schedules could be altered due to the various needs of the prison (*Id*.). Saddler also noted that the cells at the prison met all required standards (*Id*.). Wardens John M. Barwick, David Mitchell, and Cristal Crow concurred with Saddler's denial of the grievance (*Id*. at p. 19). Gutierrez appealed the grievance to the Administrative Review Board, but Ryan Nothnagle determined that the grievance was appropriately handled by the prison (*Id*.). Director Latoya Hughes concurred with Nothnagle's findings (*Id*. at p. 20). Gutierrez alleges that none of the grievance officials sought to resolve his grievance, despite their knowledge of the improper cell sizes and affects of the frequent lockdowns (*Id*. at p. 19).

On June 5, 2023, Gutierrez was in Housing Unit 3B, Cell #24, when he noticed the temperatures climb to dangerously high levels (Doc. 12, p. 20). He passed out from the heat. He spoke to Correctional Officer Cacioppo about the extreme heat, informing him that it was too hot (*Id*. at p. 21). He also informed Cacioppo that he had recently passed

out due to the heat. Gutierrez asked to speak to a nurse because of his condition (*Id.*). Officer Cacioppo refused to call medical staff and told him to just deal with the heat (*Id.*). She told him that dealing with the heat was part of his punishment for his crime (*Id.*). Gutierrez also wrote medical request slips to the nurses to report his symptoms, but no one responded to his requests (*Id.* at pp. 20, 29). He also wrote requests to mental health staff and Dr. Myers, but all of his requests went unanswered (*Id.*). Gutierrez also spoke to counselor Shockley about the temperatures in the dayroom. Shockley responded that he knew it was hot but that he had no control over the temperatures (*Id.* at pp. 21-22). Shockley acknowledged that the heat was dangerous and stated that he did not stay on the unit longer than five minutes at a time due to the heat (*Id.* at p. 22). Shockley told Gutierrez to file a grievance but noted that the prison would not do anything because it lacked the funds for repairs (*Id.*).

On June 5, 2023, Gutierrez filed a grievance about the heat and broken exhaust system (Doc. 12, p. 22). He noted that the living unit felt like a brick oven and the extreme heat was unsafe for inmates (*Id.*). He also noted that the unit lacked free standing fans to circulate air throughout the unit. Shockley responded to the grievance. Shockley noted that the temperatures were monitored by staff and free-standing fans posed a safety issue. He also noted that staff were trained to identify signs of heat related illnesses (*Id.* at p. 23). Gutierrez appealed the grievance to J. Saddler who also denied the grievance after consulting with John and Jane Doe maintenance staff (*Id.* at p. 24). Maintenance staff maintained that the air handlers were running, and the temperatures were printed out daily (*Id.*). Saddler denied the grievance (*Id.*). Gutierrez alleges that Saddler improperly

5

relied on the maintenance staff's response and failed to conduct an independent investigation into the claims (*Id.*). Wardens John Barwick, David Mitchell, and Christal Crow concurred in the decision. Administrative Review Board member Margarot Madole also reviewed the grievance and found that the prison appropriately addressed Gutierrez's concerns (*Id.* at p. 25). Latoya Hughes concurred in the decision (*Id.*).

On June 12, 2023, Gutierrez was let out of his cell to walk to the commissary (Doc. 12, p. 30). Cacioppo was working in Unit 3 and directed everyone in the unit to wait outside, but he never checked to see if there was another officer outside of the building where he directed the inmates to stand (*Id.*). Upon walking outside, Gutierrez noted that no security staff were present in the area (*Id.*). Another inmate from Unit 4 approached the line of inmates (*Id.*). The inmate approached Gutierrez in a threatening and aggressive manner and threatened to stab Gutierrez (*Id.* at p. 31). Gutierrez acted in self-defense and another inmate joined the fight against Gutierrez (*Id.*). The inmate stabbed Gutierrez in the face (*Id.*). Because of the lack of security in the area, the fight went on for some time until Cacioppo came running out and pepper sprayed the individuals, including Gutierrez (*Id.*). Gutierrez was transported to the healthcare unit and then to segregation.

On July 28, 2023, Gutierrez submitted a grievance about the lack of security that led to the fight (Doc. 12, p. 31). He also complained that he was pepper sprayed when he was only trying to defend himself (*Id.*). J. Saddler responded to the grievance but failed to address the main issue about staff presence during the assault (*Id.* at p. 32). David Mitchell concurred with the findings, and Margarot Madole reviewed the grievance on appeal (*Id.*). Gutierrez alleges that none of the grievance officials, including Saddler,

Mitchell, Madole, and Hughes, properly reviewed the grievance or the security cameras because they did not address the lack of security (*Id.*). They also ignored his request for a transfer (*Id.* at pp. 32-33). Gutierrez remained in the same prison with the individuals who assaulted him, leaving him in fear of another assault (*Id.* at pp. 32-33). Gutierrez believes he was denied a transfer in retaliation for filing grievances about his claims (*Id.* at p. 33).

On July 27, 2023, Gutierrez spoke to counselor A. Hill about the heat in the dayroom (Doc. 12, p. 25). She acknowledged that there was an issue with the heat but noted that she could not remedy the issue because she was not a maintenance person (*Id.*). She informed Gutierrez that the air was re-routed to areas of the prison where staff were located, and they were not going to fix the air (*Id.* at pp. 25-26). On July 27, 2023, Gutierrez also submitted a grievance about the air in Unit 2B, noting that the system was not blowing out cool air (*Id.* at p. 26). He noted that he was passing out from the heat (*Id.*). Hill responded to the grievance, noting that the air handlers were always running and ice was passed out to inmates when the heat index reached a certain level (*Id.*). Gutierrez alleges that Hill failed to address his specific needs or concerns (*Id.* at p. 27). Grievance Officer J. Saddler's response to the grievance included a response from John/Jane Doe Maintenance Staff that a request for funds to replace the exhaust fans was submitted in June 2023 (*Id.*). They also claimed the air handlers were running. Gutierrez maintains that the response was a lie and Saddler failed to investigate maintenance's claims (*Id.* at pp. 27-28). Wardens David Mitchell, Cristal Crow, and John Barwick concurred with the

7

findings (*Id*. at p. 28). Ryan Nothnagle rejected the grievance on the grounds that Gutierrez failed to provide a timeframe of the event (*Id*. at pp. 28-29).

## Preliminary Dismissals

Gutierrez's First Amended Complaint refers to numerous groups of defendants. He identifies Jane and John Doe Nurses who responded to sick call requests, Jane and John Doe Mental Health Staff, and Jane and John Doe Maintenance Staff. Gutierrez fails, however, to identify a specific staff member by designated number or description (*i.e.*, John Doe #1 maintenance worker, Jane Doe #2 nurse, etc.). Instead, he references groups of staff that are too generic to survive threshold review. Thus, his claims against an unknown number of defendants, including nurses, mental health staff, and maintenance staff, are **DISMISSED without prejudice**.

Gutierrez also identifies John Doe Unit Officer in 2D and a warden as individuals whom he spoke to about the cell sizes at Pinckneyville (Doc. 12, pp. 11-12). He fails to include the John Doe Unit Officer as a defendant in the case caption and thus any claim against him is **DISMISSED without prejudice**. *See* FED. R. CIV. P. 10(a); *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005). Gutierrez identifies three wardens who reviewed his grievances, including David Mitchell, Cristal Crow, and John Barwick, but he fails to identify the warden whom he wrote to about his cell size. Without additional identifying information, his claim against "the warden" is also too generic to survive threshold review.

Gutierrez also alleges claims against various grievance officials. He alleges that they were made aware of the concerns with his conditions of confinement through his

8

grievances but failed to adequately address or investigate his claims. He alleges that the grievance officials failed to investigate maintenance staff's claims in response to his grievances. Some of his claims, including his claims regarding lack of security staff, excessive lockdowns, and a request for transfer, only identify grievance officials as defendants. He alleges he pursued these claims through the grievance process, putting those officials on notice of his claims. But as the Court noted in dismissing the original complaint, the simple denial or mishandling of a grievance does not state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n. 3 (7th Cir. 2008). Nor does the failure to investigate the claims of maintenance staff violate Gutierrez's due process rights. *See Courtney v. Devore*, 595 F. App'x 618, 620-21 (7th Cir. 2014); *Owens*, 635 F.3d at 953-54. Thus, any due process or deliberate indifference claim against A. Hill, K. Smith, N. Shockley, J. Saddler, John Barwick, David Mitchell, Cristol Crow, Ryan Nothnagle, Margaret Madole, and Latoya Hughes for responding to Gutierrez's grievances regarding his cell, lockdowns, staff shortages, the excessive heat, or a requested transfer are **DISMISSED without prejudice**.[1]

Finally, Gutierrez fails to state a claim against Officer Simmons. He only mentions Officer Simmons when noting that he was housed in small cells while at Pinckneyville, but he fails to allege that he spoke to Officer Simmons about his cell conditions or that

---

[1] Gutierrez may proceed against grievance officials for decisions they made outside of simply responding to his grievances. He may proceed against those individuals who were personally involved in a constitutional violation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("To recover damages under [Section] 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.")

Simmons was personally responsible for his placement in the cells (Doc. 12, p. 12). Thus, any potential claim against Officer Simmons is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the First Amended Complaint, the Court designates the following counts:

> **Count 1:** Eighth Amendment deliberate indifference to medical needs claim against Dr. Myers for denying Gutierrez's request to be single-celled and denying various permits for his medical condition.
>
> **Count 2:** ADA claim for the denial of Gutierrez's permits and request to be single-celled.
>
> **Count 3:** Eighth Amendment conditions of confinement claim against Officer Ski and Officer Reams/Hill for housing Gutierrez in a cell that failed to meet the required size for double-celling.
>
> **Count 4:** Eighth Amendment conditions of confinement claim against A. Cacioppo, N. Shockley, and A. Hill for housing Gutierrez in a cell in extreme temperatures.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

---

[2] This includes any claim that Defendants retaliated against Gutierrez as he only states in conclusory fashion that officials at the prison retaliated against him. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

**Count 1**

At this stage, Gutierrez states a viable claim in Count 1 against Dr. Myers for his denial of permits, including a request to be single-celled. But to the extent that Gutierrez also alleges that Dr. Myers failed to treat his condition related to the extreme heat in the unit, Gutierrez fails to state a claim. Gutierrez only alleges that he wrote letters to Dr. Myers about his condition and that he never received a response. There are no allegations to suggest that Dr. Myers was aware of Gutierrez's condition or that he acted with deliberate indifference. Thus, any claim regarding Dr. Myers's treatment of Gutierrez's heat exhaustion is **DISMISSED without prejudice**.

**Count 2**

Gutierrez also states a claim in Count 2 for violations of the American with Disabilities Act, 42 U.S.C. § 12101 *et seq*. The claim cannot proceed against the individual defendants, however, because individual employees of IDOC cannot be sued under the ADA. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012). The proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670, n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his/her official capacity)). As such, Latoya Hughes, the current IDOC Director, will be **ADDED** to the case, in her official capacity only, as the proper defendant for Gutierrez's ADA claim.

**Counts 3 and 4**

Gutierrez's claims regarding the size of his cell and the excessive heat he experienced in the unit are unrelated to his claims regarding his need to be single-celled

due to medical conditions. His claim regarding cell size focuses on the square footage of all of the cells he was housed in at Pinckneyville and their unsuitability to hold two defendants, a claim that is factually different from his allegation that he needed to be in a single-man cell due to his urinary issues. His claims in Counts 3 and 4 also involve different defendants, including prison officials whom he spoke to about the conditions he experienced in the cells. Accordingly, consistent with *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007), and Federal Rules of Civil Procedure 18 and 20, the Court will sever Counts 3 and 4 into a separate case and will open a new case with a newly assigned case number.

## Motion for Counsel

In addition to his First Amended Complaint, Gutierrez also filed a motion for counsel (Doc. 13). He argues that he is unable to read or speak in English and relies on jailhouse paralegals to draft his pleadings. But there is nothing currently pending that would require the assistance of counsel. Once Defendants have been served and filed Answers, the Court will enter a scheduling order setting forth the next steps in the litigation process. If Gutierrez experiences difficulties in litigating the case at that point, he may submit another request for counsel. His request for counsel is **DENIED**.

## Disposition

For the reasons stated above, Count 3 against Officer Ski and Officer Reams/Hill and Count 4 against A. Cacioppo, N. Shockley, and A. Hill are **SEVERED** into a new case. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order; and

- The First Amended Complaint (Doc. 12).

As to the remaining claims, Count 1 shall proceed against Dr. Myers and Count 2 shall proceed against Latoya Hughes (official capacity only). All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Dr. Myers and Latoya Hughes (official capacity): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Gutierrez. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Gutierrez, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C.

Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Gutierrez's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Gutierrez, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Gutierrez is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:  July 30, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your First Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your First Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**