UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARMANDO GUTIERREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:24-cv-02645-GCS |
| | ) |
| PERCY MYERS, | ) |
| and | ) |
| LATOYA HUGHES, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

**INTRODUCTION AND BACKGROUND**

Pending before the Court is Defendant Latoya Hughes's motion for summary judgment on the issue of exhaustion of administrative remedies. (Doc. 44, 45, 52).[1] Defendant argues Plaintiff failed to exhaust his administrative remedies because he failed to exhaust any grievances related to the allegations contained in the complaint *prior* to filing this lawsuit. Plaintiff filed an opposition to the motion. (Doc. 51). Plaintiff counters that Defendant improperly focuses on the timing of the original complaint rather than the timing of operative amended complaint, which was filed after his administrative remedies were fully exhausted. Because there is no genuine dispute as to any material

---

[1]     Defendant filed the required Federal Rule of Civil Procedure 56 notice informing Plaintiff of the failure to respond to the motion for summary judgment. *See* (Doc. 46).

fact, the Court finds an evidentiary hearing unnecessary. For the reasons set forth below, the Court **GRANTS** the motion.

Plaintiff Armando Gutierrez, an inmate with the Illinois Department of Corrections ("IDOC"), who is incarcerated at Western Illinois Correctional Center ("Western"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 while at Pinckneyville Correctional Center. His original complaint, filed on December 18, 2024, was dismissed without prejudice for failure to state a claim and the Court granted him leave to file an amended complaint. (Doc. 11). Plaintiff did so on May 7, 2025. (Doc. 12).

Plaintiff alleges Defendants were deliberately indifferent to his conditions of confinement and medical conditions. On July 30, 2025, pursuant to 28 U.S.C. § 1915A, the Court conducted the preliminary review of the amended complaint and allowed Plaintiff to proceed on two claims. The first was an Eighth Amendment medical deliberate indifference claim against Defendant Dr. Percy Myers for denying Gutierrez's request to be single-celled and denying various permits for his medical condition (Count 1). (Doc. 15).[2] The second was an ADA claim for the denial of Gutierrez's permits and request to

---

[2]     The Court also allowed Plaintiff to proceed on two counts of Eighth Amendment conditions of confinement claims regarding the size of his cell and excessive heat that are unrelated to his medical claims against Dr. Myers. These claims were severed into a separate case. (Doc. 15); *see also Gutierrez v. Cacioppo*, et al., 3:25-cv-01516-SPM (Doc. 1).

be single celled against Latoya Hughes, the current IDOC Director, in her official capacity

(Count 2). *Id.*

## FACTS

The relevant grievance, according to the parties, is grievance # K59-1024-3864

dated October 5, 2024. As to the nature of this grievance, Plaintiff checked the "other"

box and specified conditions of confinement, and Plaintiff stated in part he needed

medical treatment for a shoulder issue, he requested a low bunk permit due to his

shoulder issue, and he would like to be single-celled due to his medical issues. On

November 6, 2024, the grievance officer responded: "[g]rievant has been approved

transfer as of 10/22/2024. When and where he's transferred is at the discretion of the

TCO and outside the jurisdiction of this facility[.]" The grievance officer recommended

the grievance be denied. The next day, the Chief Administrative Officer ("CAO")

concurred. (Doc. 45-4). The Administrative Review Board ("ARB") received this

grievance on November 14, 2024, and on January 31, 2025, the ARB denied the grievance

and noted "grievant was transferred to Western CC 1/2/2025." (Doc. 45-7).

Plaintiff filed suit on December 18, 2024. (Doc. 1), and he filed his amended

complaint on May 7, 2025.

## LEGAL STANDARDS

Summary Judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)); FED. R. CIV. PROC. 56(a). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). The statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Williams v. Rajoli,* 44 F.4th 1041, 1045 (7th Cir. 2022) (noting that "[w]e take a strict compliance approach to exhaustion.") (citations omitted). Exhaustion must occur before the suit is filed. *See Chambers v. Sood*, 956 F.3d 979, 981 (7th Cir. 2020); *Williams*, 44 F.4th at 1043. A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o satisfy the exhaustion requirement, an inmate must take each of the steps prescribed by the state's administrative rules governing prison grievances." *Chambers*, 956 F.3d at 983; *Jackson v. Esser,* 105 F.4th 948, 956 (7th Cir. 2024). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Maddox v. Love,* 655 F.3d 709, 721 (7th Cir. 2011) (citations omitted). The purpose of

exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Hacker v. Dart,* 62 F.4th 1073, 1084 (7th Cir. 2023).

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008); *Jones v. Lamb*, 124 F.4th 463, 469 (7th Cir. 2024). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following procedures:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, 544 F.3d at 742 (7th Cir. 2008); *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015).

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's

Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq.* The grievance procedures require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint[,] or grievance has not been

resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the

standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

A prisoner can amend the complaint to add a new claim or defendant, if he fully exhausts his administrative remedies before seeking leave to amend. *See, e.g.*, *Cannon v. Washington*, 418 F.3d 714, 719-720 (7th Cir. 2005); *Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir. 2005); *Getty v. Santos*, Case No. 3:18-CV-1134-MAB, 2020 WL 2832465, at *4-6 (S.D. Ill. May 31, 2020). This exception does not allow a plaintiff to file an amended complaint to replead previously unexhausted claims and thereby circumvent the PLRA's exhaustion requirement. Rather, it allows a plaintiff to raise one or more new, properly exhausted claims against new defendants, if he has fully exhausted all available remedies before hailing the new defendants into court. *See Barnes*, 420 F.3d at 678. In this respect, an amended complaint serves as the functional equivalent of a new complaint, marking the point in time when exhaustion as to those new claims and/or new defendants must be complete. *Id.* at 678 (citation omitted). Under this exception, Plaintiff's deadline for exhausting his administrative remedies as to all new claims and defendants was May 7, 2025, the date he submitted the amended complaint.

### DISCUSSION

Defendant argues that from April 6, 2022, through December 18, 2024, Plaintiff neither filed, nor appealed any grievances to the ARB related to any issues regarding the

ADA accommodations contained in Count 2. Plaintiff counters that as of the date of his filing of the amended complaint the exhaustion requirement had been satisfied. (Doc. 51, p. 2).

First, Defendant argues that grievance # K59-1024-3864 does not relate to any ADA accommodations. Specifically, Defendant argues that this grievance requests only a low bunk permit for his shoulder issues and that he only wanted medical treatment because of his shoulder issues. Thus, Defendant maintains that this grievance is not related to the various permits Plaintiff alleges he needed and does not mention requests for an ADA accommodation. Further, Defendant argues that if the Court finds that this grievance was related to his requests for an ADA accommodation, it fails to exhaust as Plaintiff filed the lawsuit prior to exhausting his administrative remedies. The Court agrees with Defendant that this grievance is not related to a claim for ADA accommodations.

Here, the Court finds that Plaintiff's grievance # K59-1024-3864 does not relate to his ADA claim. The grievance is about a lack of having a single cell because of medical issues, a lack of medical care as to his shoulder issues, and his request for a low bunk permit. The record is clear that Plaintiff did not file a grievance related to this ADA claim. The Seventh Circuit has noted that an inmate is required to file a separate grievance "if the underlying facts or the complaints are different." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). For instance, in *Bowers v. Dart*, 1 F.4th 513 (7th Cir. 2021), the Seventh Circuit found that a grievance complaining about an officer's failures to respond *during*

an attack did not serve to exhaust a claim that officers failed to protect the plaintiff *before* the attack. The Seventh Circuit noted that claims in the grievance were "substantially distinct from the allegations in [the plaintiff's] federal complaint." *Id.* at p. 517. Additionally, the Seventh Circuit found that a grievance about the lack of water in an observation cell did not serve to exhaust claims about other issues with the same cell, including the presence of feces and chemical agents, because those claims were substantively distinct from the claims in the grievance. *See Jackson*, 105 F.4th at 959-961.

Here, Plaintiff claims in his grievance that on September 18, 2024, he was cuffed behind his back further injuring his shoulder, he had been refused medical treatment for his shoulder, and he needed a permit for the bottom bunk. He also asked to be single celled. This is substantively different from his ADA claim wherein he alleges he was denied various permits and single cell accommodations. In the grievance, Plaintiff states the specific date, September 18, 2024, and that he had been denied multiple requests to see the doctor. However, this grievance does not allege that he was being denied ADA accommodations from April 2022 through December 18, 2024. Thus, this grievance cannot serve to exhaust his ADA claim.

Second, assuming *arguendo* this grievance was related to his ADA claim, the Court finds Plaintiff cannot sue first and exhaust later. And that is precisely what Plaintiff did here. Plaintiff's allegations regarding lack of permits and having a single cell started in April 2022. (Doc. 12, p. 10; Doc. 15, p. 2). He submitted the grievance on October 5, 2024.

The ARB received the grievance on November 11, 2024, and the ARB issued its decision on January 31, 2025. Plaintiff filed this lawsuit on December 18, 2024. There is no evidence in the record that *at the time* of the filing of the lawsuit, December 18, 2024, that Plaintiff's claim in his grievance was being ignored. Almost two and half months elapsed between the submission of the grievance at the first level on October 5, 2024, and the filing of this lawsuit on December 18, 2024. That is not enough time to complete a meaningful review of the issues contained in those grievances.

Further, this ADA claim contained in the amended complaint is not a "new claim against a "new defendant" that would allow exhaustion prior to the time of the filing of the amended complaint. His original complaint contained allegations stemming from November 25, 2023, through September 20, 2024. (Doc. 1; Doc. 11. p. 2-3). The allegations in the original complaint regarding the incident on September 20, 2024, state Plaintiff was cuffed behind his back, the medical staff refused his cuffing permits, and medical staff refused his request to be single-celled. The amended complaint contains a new date of April 2022, wherein Defendant Myers initially refused his various requests for permits. Thus, Plaintiff should have exhausted his administrative remedies prior to filing his initial suit.

Lastly, the Court rejects Plaintiff's argument that the grievance process was unavailable to him due to being on a court writ, being transferred, and being denied access to medical providers during the time after the alleged events. Based on the record,

the Court finds the grievance process was available to Plaintiff as there is no allegations/evidence that a staff member took actions to prevent Plaintiff from filing grievances. Further, the record reveals that from May 20, 2022, through December 17, 2024, Plaintiff submitted at least thirty-three (33) grievances complaining about medical treatment, mail handling, staff conduct, video visits, covid, state pay, recreation, library, conditions, transfer, dietary, low bunk, shoulder issue and safety concerns. Clearly, the grievance process was available to Plaintiff, and he availed himself of the process. (Doc. 45-2, p. 4; 45-3; 45-5, p. 4, 45-6, p. 1).

Accordingly, the ADA claim against Defendant Hughes is dismissed without prejudice for failure to exhaust administrative remedies. *See, e.g., Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (stating that "[a] premature lawsuit must be dismissed without prejudice, and the prisoner must file a new suit fully exhausting administrative remedies."). Plaintiff may refile a new lawsuit asserting his ADA claim if he meets the statutory requirements.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendant Hughes (Doc. 44). The Court **DISMISSES without prejudice** the ADA claim against Defendant Hughes

(Count 2) for failure to exhaust administrative remedies. The Court **DIRECTS** the Clerk

of the Court to enter judgment reflecting the same at the close of the case.

This matter will proceed as to Count 1 against Defendant Myers.

**IT IS SO ORDERED.**

**DATED:  May 26, 2026.**

Digitally signed by
Judge Sison
Date: 2026.05.26
16:14:20 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**